UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANDRE J. HUNT, | ) | CASE NO. 1:17-CV-01444 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| vs. | ) | |
| | ) | |
| FRANK SUNDQUIST, *et al.* | ) | **PLAINTIFF'S TRIAL BRIEF** |
| | ) | |
| Defendants. | ) | |

Plaintiff Andre J. Hunt, through counsel, respectfully submits this Trial Brief to the Court, pursuant to section 6 of this Court's Trial Order dated October 7, 2019 (ECF No. 55).

I.   **FACTS ESTABLISHED IN DISCOVERY**

The incident at the heart of this lawsuit occurred on July 6, 2015. At that time, Plaintiff Andre Hunt was a pretrial detainee being held at the Ashtabula County Jail on charges of aggravated robbery and two weapons related charges. As of July 6, 2015, Mr. Hunt had not yet pled guilty to any charge. During this time, Defendant Frank Sundquist was a corrections officer at the Ashtabula County Jail. During his time working at the jail, Defendant Sundquist had multiple disciplinary issues and was terminated multiple times. Defendant Mark Ashcraft was also a corrections officer at the Ashtabula County Jail as of the date of the incident and continues to be one currently.

On July 6, 2015, Mr. Hunt flooded his cell and the two Defendant corrections officers responded. Water had accumulated on the cell floor rising to at least a couple of inches. When Defendants arrived at Mr. Hunt's cell, Defendant Ashcraft pointed a TASER through the food tray slot of the closed cell door. Defendants instructed Mr. Hunt to get down on the ground. After Mr. Hunt complied with this demand Defendants opened Mr. Hunt's cell door. When the door was

opened, Mr. Hunt was down on the ground laying on his stomach.  Defendant Ashcraft had his TASER pointed at or near Mr. Hunt.  Defendant Sundquist grabbed Mr. Hunt by his ankles and drug him across the cell floor, at which point Mr. Hunt hit his leg on the cell room bed.  Defendant Sundquist proceeded to put his knee in Mr. Hunt's back and handcuffed Mr. Hunt's hands behind his back.  Defendant Sundquist grabbed Mr. Hunt by the back of the neck and head and pushed his face into the water on the cell floor.  When Mr. Hunt's face was being held in the water, Mr. Hunt's body flailed.  While Mr. Hunt's head was pushed into the water, this is the only time during the incident which Mr. Hunt could be perceived as resistive.  Defendant Sundquist lifted Mr. Hunt's head out of the water and said, "you like that?"

Defendants escorted Mr. Hunt out of his cell with Defendant Sundquist physically guiding him.  Defendants transported Mr. Hunt from his cell to an interview room.  Mr. Hunt's hands were handcuffed behind his back while being transported from his cell to an interview room.  During this transport, Defendant Sundquist used Mr. Hunt's body to forcibly open a heavy metal door used to lock inmates inside the 3 West wing of the jail.  During this transport, Defendant Sundquist pushed Mr. Hunt against the exterior door of an elevator.  While on the elevator, Defendant Ashcraft asked Mr. Hunt why he flooded his cell.  When Mr. Hunt turned his head to attempt to answer Defendant Ashcraft, Defendant Sundquist said that Mr. Hunt needs to "shut the fuck up" and slammed Mr. Hunt's face into an interior corner wall of the elevator.

When the parties arrived at the interview room Mr. Hunt was seated and restrained.  Defendant Sundquist physically sat Mr. Hunt down.  While Defendant Ashcraft was shackling Mr. Hunt to a bench in the interview room, Defendant Sundquist said to Mr. Hunt "If you kick my partner, I'll fucking kill you."  Defendant Sundquist put his hands around Mr. Hunt's neck and began to choke him.

Following this event, Defendant Sundquist submitted an inaccurate and incomplete Response to Resistance and Aggression Report. The Ashtabula County Sheriff's Department and the Federal Bureau of Investigation conducted an investigation of the incident. As a result of the incident, Defendant Sundquist was terminated from the Ashtabula County Sheriff's Department. As a result of the incident, Defendant Sundquist was criminally charged with three counts of assault and two counts of dereliction of duty. Defendant Sundquist pled no contest to one count of assault pursuant to a plea agreement.

**II.     PLAINTIFF'S CLAIMS AND CONTROLLING LAW**

Plaintiff brings this suit under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. The statute authorizes private parties to enforce their federal constitutional rights against defendants acting under color of state law. The basic elements of a § 1983 claim are: 1) the deprivation of a federally-protected right by; and 2) an actor acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

A pretrial detainee's constitutional right arises under the Fourteenth Amendment, which guarantees the right to be free from excessive force by a law enforcement officer. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). A law enforcement officer can be liable for excessive force by either actively participating in the use of excessive force, supervising the officer who used excessive force, or by owing the plaintiff a duty to protect from another's use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Plaintiff's claims are one of excessive force as to Defendant Frank Sundquist by actively participating in the use of excessive force; and one of failure to intervene as to Defendant Mark Ashcraft by owing the Plaintiff a duty to protect from Defendant Sundquist's use of excessive force.

A. **Standard for Excessive Force Claims**

The constitutional right deprived and applicable standard for § 1983 claims of excessive force against law enforcement depends on the legal status of the plaintiff at the time of the incident. *Gravely v. Madden*, 142 F.3d 345, 348–49 (6th Cir. 1998). The Fourth Amendment right against unreasonable searches and seizures applies to excessive force claims that arise in the context of an arrest or investigatory stop. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). The Fourteenth Amendment's due process clause applies to pretrial detainees once an arrestee has had his probable-cause hearing or arraignment. *Id.* at 865. And the Eighth Amendment's ban against cruel and unusual punishment applies to excessive force claims brought by convicted prisoners. *Id.* at 864.

Prior to the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015), the standard to be applied to pretrial detainee excessive force claims was in flux with some court's previously requiring a plaintiff to prove a defendant acted with a certain subjective intent. *McCort v. Muskingum Cty.*, No. 2:17-CV-620, 2019 WL 234785, at *3 (S.D. Ohio Jan. 16, 2019), *report and recommendation adopted,* No. 2:17-CV-620, 2019 WL 529571 (S.D. Ohio Feb. 11, 2019) ("Pre-*Kingsley*, the Sixth Circuit found that, in bringing a pre-trial detainee excessive force claim, a plaintiff was required to prove a defendant acted with a certain subjective intent. . . ."). "But the Supreme Court in *Kingsley* explicitly rejected this position." *Id.* at *4. In *Kingsley*, the Supreme Court held "[w]e conclude with respect to that question that the relevant standard is objective not subjective. Thus, the defendant's state of mind is not a matter that a plaintiff is required to prove." *Kingsley*, 135 S. Ct. at 2472. In *Kingsley*, the Supreme Court

4

expressly adopted the Seventh Circuit's pattern jury instruction on § 1983 excessive force claims. *Id*. at 2471-73.[1]

A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 192 L. Ed. 2d 416 (2015). "Purposely" or "knowingly" for this case is not whether Defendants acted with any specific purpose or intent to deprive Plaintiff of his rights, but only that the act of force itself was intentional. As discussed in *Donald v. Wilson*, an intentional act and specific intent "are completely different." 847 F.2d 1191, 1199 (6th Cir. 1988), *abrogated on other grounds by Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 109 S. Ct. 1981, 104 L. Ed. 2d 557 (1989) ("The magistrate and the defendants confused the requirement . . . that there be an intentional *act* with a requirement that there be a specific intent to deprive one of a federally protected right. The two concepts are completely different.")(emphasis in original). Defendants here do not claim that Defendant Sundquist's acts of force were accidental. Therefore, the only actionable inquiry as to liability for excessive force is whether Defendant Sundquist's intentional acts were objectively unreasonable.

B.  **Standard for Bystander Liability or Failure to Intervene**

The duty to protect arises when a law enforcement officer that did not actively participate in the challenged conduct "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). The duty to protect applies to corrections

---

[1] The Seventh Circuit's Pattern Jury Instruction 7.09 for excessive force is reflected in Plaintiff's Proposed Jury Instruction No. 1 submitted on October 28, 2019.

officers, as well. *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)).

An officer "observes" when he is present and stands "idly by" watching while another officer uses excessive force. *See Durham*, 97 F.3d 862, 868 (6th Cir. 1996). In *Durham*, the court extended the duty to protect to a state hospital nurse when she failed to protect the plaintiff, who was found incompetent to stand trial and committed to the hospital. *Id.* at 864. While a conflict between the hospital security guard and plaintiff ensued, the nurse "stood idly by and watched the beating." *Id.* According to the court, the nurse neglected her duty to protect those within her care, because she could have asked the security guard to stop the attack or request the assistance of other hospital security guards. *Id.*

Here, Defendant Ashcraft satisfies the first requirement of owing Mr. Hunt a duty to protect because he both observed Defendant Sundquist use excessive force against Mr. Hunt and had reason to know Defendant Sundquist would use excessive force. Like the defendant in *Durham*, Defendant Ashcraft observed and stood idly by while Defendant Sundquist used excessive force against Mr. Hunt. According to Defendant Ashcraft, he was present while Defendant Sundquist held Mr. Hunt's head under water, used Mr. Hunt's body to forcibly open the sally port door, forced him against the elevator doors, shoved him in the corner of the elevator, and choked him in the interview room. Defendant Ashcraft, like the defendant in *Durham*, could have prevented the harm to Mr. Hunt by asking Defendant Sundquist to refrain or by requesting the assistance of other corrections officers.

### C. Analysis of Elements of Claims

#### 1. Elements of Color of Law

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

*Cassady v. Tackett*, 938 F.2d 693 (6th Cir. 1991). The parties have stipulated that the Defendants acted under color of state law.

### 2. Elements of Excessive Force

The genesis of this claim against Defendant Sundquist is whether he used excessive force against Plaintiff Hunt on July 6, 2015. Because there is no question that Defendant's actions were intentional, to succeed on this claim Plaintiff need only prove that the force used against him by Defendant Sundquist was "objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). As addressed in the proposed jury instructions on this question, the jurors should consider the degree of force that a reasonably prudent corrections officer would have applied in the same circumstances. Defendant Sundquist's subjective intent is not at issue in this case under controlling precedent. *Id*.

### 3. Elements of Failure to Intervene

To succeed on his claim for failure to intervene, Plaintiff must prove the following elements: 1) Defendant Frank Sundquist used excessive force on Plaintiff; 2) Defendant Ashcraft observed the excessive force or had reason to know it was being used; 3) Defendant Ashcraft had a realistic opportunity to do something to prevent harm from occurring; and 4) Defendant Ashcraft failed to take reasonable steps to prevent harm from occurring. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

## III. ISSUES OF FACT TO BE DECIDED BY THE JURY

Based on the outline of the operative elements of each claim above, the determinative issues of fact to be decided by the jury are as follows:

- Whether the actions of Defendant Sundquist were objectively unreasonable.
- Whether Defendant Ashcraft observed the excessive force of Defendant Sundquist, or whether Defendant Ashcraft had reason to know excessive force was being used

by Defendant Sundquist.

- Whether Defendant Ashcraft had a realistic opportunity to intervene during Defendant Sundquist's use of excessive force.

- Whether Defendant Ashcraft did in fact fail to intervene.

DATED:  October 28, 2019                                    Respectfully submitted,

*/s/ Tera N. Coleman*
David F. Proaño (0078838)
Tera N. Coleman (0090544)
Taylor M. Thompson (0098113)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone: (216) 621-0200
Fax: (216) 696-0740
dproano@bakerlaw.com
tcoleman@bakerlaw.com
tathompson@bakerlaw.com

*Counsel for Plaintiff Andre J. Hunt*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2019, a copy of the foregoing document was filed electronically with the Clerk of Courts using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Dated: October 28, 2019          Respectfully submitted,

*/s/ Tera N. Coleman*
Tera N. Coleman (0090544)

One of the Attorneys for Plaintiff Andre J. Hunt